UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER J. PEARSON,

        Plaintiff,

v.                                Case No. 1:14-cv-9
                                Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/


**OPINION**

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

      Plaintiff was born on December 18, 1989 (AR 245).[1]  He alleged a disability onset date of May 26, 2011 (AR 245).  Plaintiff completed GED, and had previous employment as an infantryman and a retail sales worker (AR 240).  He identified his  disabling conditions as PTSD, hip injury and fallen arches (AR 239).  The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 24, 2013 (AR 11-21).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

     **I.  LEGAL STANDARD**

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step

2

analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 26, 2011, through his last insured date of June 30, 2013 (AR 13).  At the second step, the ALJ found

that through the last dated insured, plaintiff had the following severe impairments: bilateral pes planus (flat feet); right hip arthralgias; obesity; post-traumatic stress disorder (PTSD); adjustment disorder with mixed anxiety and mood; alcohol abuse; and marijuana abuse (AR 13).  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16).

The ALJ decided at the fourth step:

> [T]hat, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  He could lift and carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, he could stand and walk up to 2 hours and could sit for a total of about 6 hours.  He could occasionally climb ramps and stairs; could not climb ladders, ropes and scaffolds; could occasionally balance, stoop, kneel, crouch and crawl; and should have no exposure to unprotected heights or around dangerous moving machinery.  He could understand, remember and carry out simple instructions and should have no contact with the general public and no more than occasional contact with coworkers and supervisors in a small-group environment with no production-paced work requirements.

(AR 16).  The ALJ also found that plaintiff had no past relevant work other than his military service (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light work in the national economy (AR 20-21).  Specifically, plaintiff could perform the following work in the regional economy (the State of Michigan): machine tender (7,800 jobs); packager (6,300 jobs); and light assembler (14,000 jobs) (AR 20-21).   Accordingly, the ALJ determined that plaintiff has not been under  a disability, as defined in the Social Security Act, from March 26, 2011 (the alleged onset date) through December 31, 2013 (the date last insured) (AR 21).

### III.  ANALYSIS

4

Plaintiff raised one issue on appeal:

**After Adopting Two Medical Source Opinions Regarding Mr. Pearson's Mental Functioning, the ALJ's Controlling Hypothetical Question to the Vocational Expert Inadequately Described Mr. Pearson's Limitations. Does the ALJ's Reliance on the Vocational Expert's Opinion that Mr. Pearson Could Perform "Other Work" Serve as Substantial Evidence?**

Plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) was flawed because it failed to address certain limitations found by psychologist George Starrett, Ed. D. and Veterans Administration (VA) psychiatrist Ramasubba R. Tatini, M.D.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

The ALJ summarized plaintiff's medical history as follows:

The claimant has post-traumatic stress disorder (PTSD) as diagnosed by Dr. Ramasubba R.Tatini, the staff psychiatrist at the VAMC, in August 2011 (Exhibit 4F p. 33). The claimant alleged "daily panic attacks" as of Febmary 27,2012 (Exhibit 8F p. 5), and was also smoking marijuana 2 to 3 times a day. The meeting with Dr.

5

E. William Fowler, a VA psychiatrist, did not go well on March 28, 2012, with GAF of 45, indicative of serious symptoms or serious impairment in social, occupational, or school functioning, as set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM) (Exhibit 4F pp. 105-108). The claimant was also diagnosed with PTSD and depressive disorder NOS by Dr. Richard 1. Meschino (a psychiatrist at the VAMC) in April 2012; and he assigned a global assessment of functioning (GAF) of 46. The claimant, being impatient with lack of psychiatric progress, requested a new psychiatrist and quit taking the prescribed Paroxetine as of May 10, 2012 (Exhibit 4F p. 96); and he had a GAF of 54, indicative of moderate symptoms and moderate difficulty in social, occupational or school functioning, at that time (Exhibit 4F, p. 98). In June 2012, Dr. Tatini noted that disability rating for PTSD was rather mild (pp. 20-21) and assigned a GAF of 51-60 (p. 22). The claimant reported doing well as of July 27, 2012 (Exhibit 4F p. 83), but then claimed daily panic attacks by January 15, 2013 (Exhibit 8F p. 17). Dr. Zamor, a prior VA psychiatric treater, also offered a GAF of 58 as of September 21, 2012 (Exhibit 4F p. 80). On October 18, 2012, the claimant was doing pretty well and asked to be discharged from psychiatric care (pp. 75-76). Dr. Carl H. Zamor, a psychiatrist at the VAMC[] assigned a GAF of 58 in September and October 2012 (pp. 72-73, 80). The claimant was assigned a GAF of 58 as of Febmary 27, 2013 (Exhibit 8F p. 7) with fairly benign mental status examination (Exhibit 8F p. 6). The claimant was asked by the psychiatrist to discontinue marijuana use (Exhibit 8F p. 8). George Starrett, Ed.D., reviewed the mental evidence for the Disability Determination Services (DDS) on August 16, 2012; and he found the claimant had a severe anxiety disorder (Exhibit 1A p. 5).

The claimant has adjustment disorder with mixed anxiety and mood disorders as noted by Dr. Tatini on August 14, 2011 (Exhibit 4F p. 21).

The claimant has a history of alcohol abuse. The claimant gave a history of being disciplined when stationed at Fort Hood, Texas when they found him attending drill under the influence of alcohol and provided him substance abuse treatment (Exhibit 4F p. 37). He also has been diagnosed with alcohol abuse as noted by Dr. Tatini on August 14, 2011 (Exhibit 4F (pp. 21-21). The claimant stated that he routinely used alcohol four days per week, that he drank rum and "jager," and that he consumed about one-fifth on days that he drank (Exhibit 4F p. 54).

The claimant has also reported marijuana abuse as noted by Dr. Carl H. Zamor (a psychiatrist with the VAMC) in January 2013, at which time the claimant reported using marijuana every day (Exhibit 8F p. 16); and in February 2013, at which time the claimant reported smoking marijuana two to three times a day for anxiety and pain control (Exhibit 8F p. 5).

(AR 17-18).

6

The ALJ's decision provided the following evaluation of the doctors' opinions regarding plaintiff's mental limitations:

> As for the opinion evidence, great weight is given to the opinion of Dr. Tatini, the claimant's treating psychiatrist. The undersigned notes the relatively mild degree of psychiatric impairment from VA psychiatrist Dr. Tatini in June 2012 (Exhibit 4F p. 20) [AR 477]. The mental status examination looks relatively benign with global assessment of functioning (GAF) of 58 from Dr. Tatini as of October 22, 2012 (Exhibit 4F p. 72). . . Great weight is given to the opinion of Dr. Starrett, who reviewed the mental evidence for the DDS (Exhibit 1A) due to his comprehensive review of the record at that point as well as in view of his program knowledge.

(AR 19).

In light of the medical evidence, the ALJ formulated the following hypothetical question and posed it to the VE:

> Essentially a limitation to light work activities from an exertional standpoint as defined by the regulations. I would also ask you to assume occasional ramp and stair climbing; no ladder rope or scaffold climbing; occasional balancing, stooping, kneeling, crouching, crawling. As far as the capacity for environmental exposures, the only thing I would rule out there would, be an exposure to unprotected heights and dangerous moving machinery. And then from a, a mental standpoint, I ask you to assume essentially a limitation to work that would involve the understanding, remembering and carrying out of simple instructions; not complex or even semiskilled. And also from a social standpoint, no general public contact; occasional supervisory and co-worker contact in a small familiar group environment with non-production paced work. If those were the limitation can you give me your opinion as to whether there would be any work in the regional economy that would exist at significant numbers that would fit that description?

(AR 62). Based on the restrictions as set forth in this hypothetical question, the VE testified that such a person would be able to perform 28,100 unskilled, light jobs (AR 62). The ALJ accepted this testimony as the basis for his decision (AR 20-21).

Plaintiff contends that the hypothetical question is flawed because the ALJ did not address all of the limitations found by Drs. Tatini and Starrett. With respect to Dr. Tatini, plaintiff

relies on an August 14, 2011 disability report which stated that plaintiff's PTSD caused panic attacks more than once per week; disturbances of motivation and mood; difficulty establishing and maintaining effective work and social relationships; difficulty adapting to work stress; and an inability to establish and maintain effective relationships (AR 387-88). Dr. Tatini provided the following narrative summary:

> "[A]lthough [plaintiff] has all the above-mentioned symptoms, [he] still is motivated to pursue his further education, and a job to support his financial needs. [Plaintiff] has hope that he can get rid of these experiences and hopes his life will be better. In my openion [sic] [plaintiff] has PTSD and it will take a long time to get better. [Plaintiff] needs combination of psychotherapy (intensive) and psychotropic medications.

(AR 389).

Defendant points out that on June 7, 2012, Dr. Tatini was requested "to clarify which one response . . . best summarized the veteran's level of occupational and social impairment and clarify whether the alcohol abuse is related to or caused by either axis I diagnosis of PTSD and adjustment disorder with mixed anxiety and mood" (AR 389). Dr. Tatini provided the following response:

> This veteran has been experienced near death from the Explosison [sic] while in service, at one time he was hit by a dislodged tire of a vehicle in his chest, after the vehicle was blown out. Pt has recurrent intrusive recollections o[f] that incident and has nightmares about that incident as well. At that time of my examination on August 12, 2011 veteran told me that he has problems with alcohol as well, and also disciplined at Forthood texas [sic] for drinking excessive amounts.

> Hence I diagnose him with PTSD and Alcohol Abuse on AXIS I. I do not see any adjust medisorder [sic] with mixed anxiety and mood.

> Regarding the Occupational and social Impairment . . . The best one is:

> > Occupational and social impairment due to mild or transient symptoms which decrease work efficiency

8

> and ability to perform occupational tasks only during
> periods of significant stress, or; symptoms controlled
> by medication[.]

(AR 389-90, 476-77). *See* Defendant's Brief (docket no. 13 at p. ID# 712).

Plaintiff also relies on the restrictions as set forth by Dr. Starrett, a non-examining state agency psychologist, who reviewed the medical evidence and found that as of August 16, 2012, plaintiff was not disabled (AR 73-82). In reaching this determination, Dr. Starrett found that plaintiff's mental condition was not significantly limited with the following exceptions: plaintiff had sustained concentration and persistence limitations, specifically, plaintiff was moderately limited in the ability to maintain attention and concentration for an extended period; plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and plaintiff was moderately limited in his ability to interact appropriately with the general public (AR 79-80). In providing a narrative of plaintiff's mental RFC, Dr. Starrett stated that plaintiff had impairments of PTSD, depression, and panic disorder without agoraphobia (AR 80). Dr. Starrett further stated that "[r]ecent VA notes indicate that the claimant has demonstrated improved functioning with medication compliance," and that he is capable of performing simple repetitive tasks in a setting in which he has only limited interaction with the general public (AR 80).

The ALJ's hypothetical question incorporated most of the limitations identified by Drs. Starrett and Tatini, i.e., plaintiff could only "understand, remember and carry out simple instructions; not complex or even semiskilled" and he "should have no contact with the general public and no more than occasional contact with coworkers and supervisors in a small-group

9

environment with no production-paced work requirements" (AR 16).   The ALJ's reference to "simple instructions" and "no production-paced work requirements" include the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).  In this regard, unskilled work has been defined as work which involves simple and routine tasks.

> We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks.  20 C.F.R. § 404.1568(a).

*Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000).  As discussed, all of the positions identified by the VE involved unskilled work (AR 20-21, 62).

However, the ALJ did not address the issue of stress in the workplace, a limitation which is not explicitly included in the definition of "unskilled work."  *See* 20 C.F.R. § 404.1568(a). Dr. Tatini noted that plaintiff's work efficiency and ability to perform occupational tasks decreased "only during periods of significant stress, or; symptoms controlled by medication" (AR 390, 477). While the ALJ apparently adopted this opinion (AR 19), his decision did not address the extent to which stress could affect plaintiff's work efficiency or ability to perform occupational tasks, the level

of stress that plaintiff could tolerate, or whether the symptoms of stress were controlled by medication.  In sum, the ALJ's decision apparently acknowledged that plaintiff was limited "during periods of stress" but did not address the parameters of that limitation (e.g., limiting plaintiff to "low stress" jobs).  *See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (a hypothetical question which limits the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

The Commissioner must provide a statement of evidence and reasons on which the decision is based.  *See* 42 U.S.C. § 405(b)(1).  While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review."  *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (internal quotation marks omitted).  Here, the ALJ did not articulate the extent to which stress limited plaintiff's ability to perform work related activities.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

### IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner

should re-evaluate the opinions of Dr. Tatini and determine the extent to which stress limited plaintiff's ability to perform work related activities.  A judgment consistent with this Opinion will be issued forthwith.


Date: <u>March 20, 2015</u>     <u>/s/ Hugh W. Brenneman, Jr.</u>
             Hugh W. Brenneman, Jr.
             United States Magistrate Judge